No. 2022-2160

# In the United States Court of Appeals for the Federal Circuit

CROCS INC.,

*Plaintiff-Appellee,*

*v.*

EFFERVESCENT, INC., HOLEY SOLES HOLDINGS, LTD,

*Defendants,*

DOUBLE DIAMOND DISTRIBUTION, LTD.,
U.S.A. DAWGS, INC., MOJAVE DESERT HOLDINGS, LLC

*Defendants-Appellants.*

Appeal from the United States District Court for the District of Colorado, Case No. 06-cv-00605-PAB-MDB
Hon. Chief Judge Philip A. Brimmer.

## PETITION FOR REHEARING EN BANC

David A. Caine
ARNOLD & PORTER
KAYE SCHOLER LLP
Five Palo Alto Square, Suite 500
3000 El Camino Real
Palo Alto, CA 94306
(650) 319-4500 (tel)
(650) 319-4700 (fax)
david.caine@arnoldporter.com

Michael A. Berta
Sean M. Callagy
Isaac L. Ramsey
ARNOLD & PORTER
KAYE SCHOLER LLP
Three Embarcadero Center,
10th Floor
San Francisco, CA 94111-4024
(415) 471-3100 (tel)
(415) 471-3400 (fax)
michael.berta@arnoldporter.com

*Counsel for Appellee Crocs Inc.*

- additional counsel listed in reverse cover -

Andrew T. Tutt
ARNOLD & PORTER
KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC 20001
(202) 942-5000 (tel)
(202) 942-5999 (fax)
andrew.tutt@arnoldporter.com

## CERTIFICATE OF INTEREST

Counsel for Appellees certifies the following:

1. The full names of every party or amicus represented by me are:

   Crocs, Inc.

2. The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

   N/A

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the parties or amicus curiae represented by me are:

   BlackRock, Inc. and FMR LLC

4. The names of all law firms and the partners or associates that appeared for the parties or amicus now represented by me in the trial court or agency and have not or will not appear in this court are:

- Matt Stump (Faegre & Benson LLP)
- Natalie Hanlon-Leh (Faegre & Benson LLP)
- Jared Barrett Briant (Faegre & Benson LLP)
- George Robert Green (Arnold & Porter LLP)
- Melanie Edith Gavisk (Arnold & Porter LLP)
- Paul W. Rodney (Arnold & Porter LLP)
- Lara Palanjian (Arnold & Porter LLP)
- Julie Kent (Arnold & Porter LLP)
- George Langendorf (Arnold & Porter Kaye Scholer LLP)
- Suneeta Hazra (Arnold & Porter Kaye Scholer LLP)

5. The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal are:

   None.

6. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees):

   N/A

DATED: December 4, 2024

*/s/ Michael A. Berta*
Michael A. Berta

# TABLE OF CONTENTS

**Page**


CERTIFICATE OF INTEREST .......... i

FEDERAL CIRCUIT RULE 40(c) STATEMENT OF COUNSEL .......... 1

INTRODUCTION .......... 3

BACKGROUND .......... 6

ARGUMENT .......... 10

I. *Baden*, *Sybersound*, *Kehoe* and *Dastar* Foreclose Dawgs' Lanham Act 43(a)(1)(B) Claim .......... 10

A. *Baden*, *Sybersound*, *Kehoe* and *Dastar* Hold that False Claims are Actionable Only if They Concern a "Characteristic of the Good Itself" .......... 10

B. The Advertisements Here are Indistinguishable from Those Deemed Not Actionable in *Baden* .......... 12

II. Lanham Act Section 43(a)(1)(B) Does Not Provide a Cause of Action for the False Claim that a Product is "Patented" .......... 16

A. The Text, Structure, and History of the Lanham Act Forecloses a Cause of Action for False Patent Marking .......... 16

B. The Lanham Act Should Be Construed Not to Conflict with the Patent Act .......... 18

III. *En Banc* Rehearing is Needed Because the District Court Granted Summary Judgment Where Dawgs Did Not Plead with Specifity Any Alleged Falsity Other than that Croslite Was "Patented," "Propietary" or "Exclusive" .......... 20

CONCLUSION .......... 24

CERTIFICATE OF COMPLIANCE........................................................25

CERTIFICATE OF SERVICE...............................................................26

ADDENDUM

Crocs, Inc. v. Effervescent, Inc.,
119 F.4th 1 (Fed. Cir. 2024) ........................................................27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Azimuth Unlimited, LLC v. Sea Tel, Inc.*,
No. 10-60253-CIV, 2011 WL 13173548 (S.D. Fla. Apr. 15, 2011) .......... 19

*Baden Sports, Inc. v. Molten USA, Inc.*,
556 F.3d 1300 (Fed. Cir. 2009) .......... *passim*

*Blue Spike, LLC v. Texas Instruments, Inc.*,
No. 6:12-CV-499, 2014 WL 11848751 (E.D. Tex. July 25, 2014) .......... 21

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
539 U.S. 23 (2003) .......... *passim*

*DP Wagner Mfg. Inc. v. Pro Patch Sys., Inc.*,
434 F. Supp. 2d 445 (S.D. Tex. 2006) .......... 19

*Evans v. McDonald's Corp.*,
936 F.2d 1087 (10th Cir. 1991) .......... 8

*Forest Grp., Inc. v. Bon Tool Co.*,
590 F.3d 1295 (Fed. Cir. 2009) .......... 19

*Goode v. Gaia, Inc.*,
No. 20-CV-00742-DDD-KAS, 2023 WL 7190732 (D. Colo. Nov. 1, 2023) .......... 22

*Kehoe Component Sales Inc. v. Best Lighting Prods., Inc.*,
796 F.3d 576 (6th Cir. 2015) .......... 4, 10, 11, 16

*Nippon Steel & Sumitomo Metal Corp. v. POSCO*,
No. CIV.A. 12-2429 DMC, 2013 WL 3285206 (D.N.J. June 27, 2013) .......... 21

*Sybersound Recs., Inc. v. UAV Corp.*,
517 F.3d 1137 (9th Cir. 2008) .......... *passim*

*Zenith Elecs. Corp. v. Exzec, Inc.*,
182 F.3d 1340 (Fed. Cir. 1999) .......... 18

*Zobmondo Ent. LLC v. Imagination Int'l Corp.*,
No. CV 09-02235 ABC (PLAx), 2009 WL 8714439
(C.D. Cal. June 23, 2009) .......... 21

**Statutes**

15 U.S.C. § 1125(a) (1946) .......... 18

15 U.S.C. § 1125(a)(1) (1992) .......... 16, 18

35 U.S.C. § 292 .......... 3, 5, 18, 19

**Other Authorities**

157 Cong. Rec. 12984-86 (Sept. 6, 2011) (statement of Sen.
Kyl) .......... 20

*America Invents Act: Hearing on H.R. 1249 Before the H. Committee of the Whole House on the State of the Union*,
157 Cong. Rec. H4420–26 (2011) (statement of Rep.
Smith, Texas) .......... 20

*Baden Sports, Inc. v. Molten USA, Inc.*, No. 2008-1216 Joint
Appendix Vol. 2 (Fed. Cir.) (Aug. 18, 2008), .......... 14

*Baden Sports, Inc. v. Molten USA, Inc.*, No. 2008-1216, 2008
WL 2967594, Brief of Cross Appellant (Fed. Cir.) (June
10, 2008) .......... 14

Bryan P. Collins, *Is the Federal Circuit Breathing Life Back Into False Patent Marking Claims?*, Pillsbury (Oct. 9,
2024) .......... 6

H.R. Rep. No. 112-98(1) (2011) .......... 19

Jeff Ratinoff, *The Federal Circuit Breathes New Life into False Patent Marking Claims via Section 43(a) of the Lanham Act*, SpencerFane (Oct. 16, 2024) .......... 19

Jeffrey Ratinoff, *Patent Marking Steps After Fed. Circ. Opens Lanham Act Door*, Law360 (Nov. 8, 2024) .................................6

John Cordani, *False Patent Marking Claims Find New Home In Lanham Act*, Law360 (Oct. 30, 2024) .............................................5

## FEDERAL CIRCUIT RULE 40(c) STATEMENT OF COUNSEL

Section 43 of the Lanham Act provides:

> (a) Civil action
>
> > (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
> >
> > > (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
> > >
> > > (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125. The panel held that a statement that is false only because it states a product is "patented," when it is not, can "cause[] consumers to be misled about the nature, characteristics, or qualities of its product" and thus violates Section 43(a)(1)(B).

Based on my professional judgment, I believe the panel decision is contrary to the following decision(s) of the Supreme Court of the United States or the precedent(s) of this court: *Baden Sports, Inc. v. Molten USA, Inc.*, 556 F.3d 1300 (Fed. Cir. 2009), and *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003).

Based on my professional judgment, I believe this appeal requires an answer to one or more precedent-setting questions of exceptional importance: Whether Section 43 of the Lanham Act provides a private cause of action where a statement is false only because it falsely states that a product is "patented."

DATED: December 4, 2024

*/s/ Michael A. Berta*
Michael A. Berta

## INTRODUCTION

Falsely stating that a product is patented does not violate Section 43 of the Lanham Act. It does not "misrepresent[]" anything about the "the nature, characteristics, qualities, or geographic origin" of a product. "[I]n construing the Lanham Act, [the Supreme Court has] been 'careful to caution against misuse or over-extension' of trademark and related protections into areas traditionally occupied by patent or copyright." *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 34 (2003). Permitting suits for false statements that a product is "patented" impermissibly trenches on the Patent Act, specifically the False Marking Statute, 35 U.S.C. § 292, and the comprehensive scheme Congress enacted to address false patent claims.

The panel decision directly conflicts with *Baden Sports, Inc. v. Molten USA, Inc.*, 556 F.3d 1300 (Fed. Cir. 2009), which held that falsely stating that a product is "innovative" is not capable of misrepresenting the "nature, characteristics, or qualities" of a product. 556 F.3d at 1306; *id.* at 1307 ("[H]olding [otherwise] could create overlap between the Lanham and Patent Acts."). The panel decision also squarely conflicts with decisions of the Ninth and Sixth Circuits. *See Sybersound Recs.,*

*Inc. v. UAV Corp.*, 517 F.3d 1137, 1144 (9th Cir. 2008) (holding that a false statement that a copyrighted work is "licensed" is not capable of misrepresenting the "nature, characteristics, or qualities" of the work); *id.* at 1143 (permitting competitors to enforce copyrights through the Lanham Act would conflict with "the Copyright Act's goal of providing a statutory scheme granting rights only to copyright owners"); *Kehoe Component Sales Inc. v. Best Lighting Prods., Inc.*, 796 F.3d 576, 590 (6th Cir. 2015) (holding that "a misrepresentation is actionable under [Section 43(a)(1)(B)] only if it misrepresents the characteristics of the good itself—such as its properties or capabilities").

The panel decision further conflicts with the reasoning of the Supreme Court's decision in *Dastar*. *Dastar* held that false designations of authorship are not actionable under Section 43(a) because the words "origin of goods" in Lanham Act § 43(a)(1)(A) does not refer to the author of an idea, concept, or communication embodied in a good, but to the producer of the good itself. 539 U.S. at 37. *Dastar* makes clear that Lanham Act § 43(a)'s focus is on policing misrepresentations about the characteristics of goods *themselves*, not misrepresentations about

abstract facts about them, like who invented them or whether the invention was patented.

The panel decision also cannot be squared with the text and structure of the Lanham Act. Section 43(a)(1)(B) cannot reasonably be read to reach false statements about whether a product is patented—the provision is limited to false or misleading statements about the nature, characteristics, or qualities of products. Permitting use of the Lanham Act to bring false patent marking claims would directly conflict with the false patent marking statute, which has a comprehensive and competing enforcement mechanism for false patent marking. 35 U.S.C. § 292.

The issue in this case is exceptionally important and warrants review by the Court *en banc*. As multiple commentators have written in just the short time since the decision issued, this holding is a watershed that has "opened a window" for a fresh "flood" of "false patent marking litigation" after Congress "closed the courthouse doors" for such claims "in 2011 with the Leahy-Smith America Invents Act." John Cordani, *False Patent Marking Claims Find New Home In Lanham Act*, Law360

(Oct. 30, 2024).[1] The panel "opened the door for anyone who has standing under the Lanham Act to bring a claim for false advertising under Section 43(a) where a seller falsely claims that its products are patented or use patented materials or methods in a manner that misleads actual and potential customers." Jeffrey Ratinoff, *Patent Marking Steps After Fed. Circ. Opens Lanham Act Door*, Law360 (Nov. 8, 2024). A decision that promises to "open a door" that Congress specifically *closed* just over a decade ago warrants the full Court's careful attention. Rehearing *en banc* should be granted.

## BACKGROUND

This case arises out of a long-running lawsuit Crocs brought in April 2006 against Dawgs, a knockoff shoe brand launched by Appellant Double Diamond (hereinafter "Dawgs"). The lawsuit was stayed multiple times in favor of other proceedings. In May 2016, Dawgs amended its complaint to add a Lanham Act counterclaim against Crocs alleging that Crocs falsely marketed its shoes by advertising Croslite, the foam

[1] *See also, e.g.*, Bryan P. Collins, *Is the Federal Circuit Breathing Life Back Into False Patent Marking Claims?*, Pillsbury (Oct. 9, 2024) ("For anyone managing patent portfolios that recalls the landslide of false patent marking claims before the America Invents Act (AIA) was passed in 2011, this decision may bring back some bad memories.").

material from which Crocs shoes are made, as "patented," "proprietary," and "exclusive." Appx1394 ¶ 1 (citing Appx575-76, ¶¶ 341-47). Dawgs argued this was false because Croslite is "merely the common ethyl vinyl acetate used by many footwear companies around the world." Appx12 (quoting Appx408 ¶ 256 (counterclaim against Crocs)).

Dawgs pointed to five advertisements:

- A product listing stating that "the Crocs @ Work™ collection is built with the patented Croslite™ material to provide all-day, on-the-job comfort." Appx603-04.

- A product listing stating Crocs's shoes were "[b]uilt for your job with the comfort of our patented Croslite™ material." Appx601.

- An email stating, "The reason the shoes are so comfortable is that they are made of a patented 'closed-cell' resin." Appx1457.

- A webpage stating, "The special Patented Closed Cell Resin (PCCR) warms and softens with your body heat and molds to your feet." Appx1449.

- A blog post stating, "We've discussed our **Proven** comfort – from our patented Croslite™ material to certifications with the U.S. Ergonomics Council, American Podiatric Medical Associations, and others." Appx1451.

In September 2021, the district court granted summary judgment to Crocs on Dawgs's Lanham Act counterclaim. The district court rejected Dawgs's claim that Crocs violated Section 43(a)(1)(B) of the

Lanham Act (relating to product characteristics) because Dawgs's theory was that Crocs's use of the words "patented," "proprietary" and "exclusive" were false claims of authorship or inventorship, not false claims about the "characteristics, qualities, or geographic origin" of Crocs's products. Appx9-15. The only falsity that Dawgs alleged was that the "patented" statements were false because Crocs had not invented Croslite, which was instead used by many footwear companies; Dawgs never mentioned anything about the product qualities or characteristics of Croslite. Appx12. The claims were thus squarely foreclosed by this Court's decision in *Baden*. Appx11-12.

Although Dawgs responded to Crocs's motion for summary judgment with new arguments directed at product qualities or characteristics, the district court held that Dawgs's new arguments were forfeited because Dawgs had never made those arguments in its claim. Appx12. *See Evans v. McDonald's Corp.*, 936 F.2d 1087, 1091 (10th Cir. 1991) (A plaintiff may not "wait until the last minute to ascertain and refine the theories on which they intend to build their case," as tolerating such a practice would waste party and judicial resources and result in unfair surprise to defendants.).

The panel reversed, holding that "[a] claim that a product is constructed of 'patented' material is not solely an expression of innovation and, hence, authorship." Dkt. 62 at 10-11. This case is thus not controlled by *Baden*, the panel held, because "*Baden* did not involve false advertisements linking such claims to a product's tangible nature, characteristics, or qualities."[2] *Id.* at 11.

The panel crafted the following test for determining whether a false statement that a product is patented violates the Lanham Act: "We hold that a cause of action arises from Section 43(a)(1)(B) where a party falsely claims that it possesses a patent on a product feature and advertises that product feature in a manner that causes consumers to be misled about the nature, characteristics, or qualities of its product." Dkt. 62 at 11. Applying that test, the panel "agree[d]" with Dawgs that "because the falsehood that Croslite is patented was used by Crocs to ascribe

---

[2] The panel did not specifically discuss the ruling by the district court that, under Tenth Circuit law, Dawgs forfeited the argument that "patented" could stand for something other than a false claim of authorship because Dawgs had litigated its claim below specifically on the theory that Crocs's statements that Croslite is patented were a false claim of authorship, never mentioning anything about the characteristics or qualities of Croslite. Appx9-15.

characteristics that go to the nature and qualities of Croslite," its advertisements could be found actionable under Section 43. *Id.*

## ARGUMENT

### I. *Baden*, *Sybersound*, *Kehoe* and *Dastar* Foreclose Dawgs' Lanham Act 43(a)(1)(B) Claim

#### A. *Baden*, *Sybersound*, *Kehoe* and *Dastar* Hold that False Claims are Actionable Only if They Concern a "Characteristic of the Good Itself"

The panel decision is irreconcilable with *Baden*, *Sybersound*, *Kehoe* and *Dastar*, 539 U.S. 23. *Baden* held that falsely stating that a product is "innovative" is not capable of misrepresenting the "nature, characteristics, or qualities" of a product. 556 F.3d at 1306. *Sybersound* held that falsely stating that a copyrighted work is "licensed" is not capable of misrepresenting the "nature, characteristics, or qualities" of a product. 517 F.3d at 1144. *Kehoe* held that misrepresentations about the source of the ideas embodied in an object are not misrepresentations as to the "nature, characteristics, or qualities" of a product. 796 F.3d at 590. *Dastar* held that misrepresentations about "author of any idea, concept, or communication embodied" in an object are not misrepresentations as to the "origin" of the product. 539 U.S. at 37-38. All of these cases hold that the Lanham Act is concerned with misrepresentations about the

origin, characteristics, nature, and qualities of the product *itself*. *Kehoe*, 796 F.3d at 590; *Sybersound*, 517 F.3d at 1144; *Baden*, 556 F.3d at 1307.

Falsely labeling a product as "innovative" could influence consumer perceptions of its quality—consumers typically equate innovation with superiority—yet *Baden* still deemed such claims outside the scope of the Lanham Act. 556 F.3d at 1307. Similarly, misrepresenting a work as "licensed" could mislead consumers into assuming higher quality—consumers typically assume copyright holders only license superior work—but *Sybersound* held such claims were not actionable. 517 F.3d at 1144. Likewise, misrepresenting the originator of an idea—where an originator has a strong brand—would typically affect consumer perceptions of quality, but *Kehoe* concluded it was not a misrepresentation about the product itself. 796 F.3d at 590.

These cases collectively establish that the Lanham Act is not concerned with tangential misrepresentations that may influence consumer perceptions indirectly; it addresses misrepresentations about the inherent nature, characteristics, or qualities of the product itself. A false claim of being "patented" is no different. Although it might

influence perceptions by implying originality, innovation or exclusivity,[3] it does not misrepresent the product's actual attributes and, therefore, falls outside the statute's reach. The panel's decision cannot be reconciled with this well-settled framework.

### B. The Advertisements Here are Indistinguishable from Those Deemed Not Actionable in *Baden*

The conflict between the panel decision and *Baden* is glaring. The panel distinguished *Baden* on the basis that it "did not involve false advertisements linking such claims [that a product is constructed of "innovative" material] to a product's tangible nature, characteristics or qualities." Dkt. 62 at 10-11. Molten, however, did tout the nature, characteristics and qualities of the purportedly "innovative proprietary Dual-Cushion Technology" when promoting its basketballs:

[3] A product material that is not patented can nonetheless be original, innovative or exclusive if, for example, the material itself or the method of manufacturing it are trade secrets.


Technology Top
Dual-Cushion Technology
Molten Flat-Pebble Surface
Molten Full-Flat Seam
Advanced Basketball Technologies
Dual-Cushion Technology
Surface
Molten special soft rubber
Reinforcing layer
Bladder
High-density / high-cushion foam
Dual-Cushion Technology
Molten's innovative proprietary Dual-Cushion Technology has two dimensions: (1) a high-density / high-cushion foam between the surface and reinforcing layer; and, (2) a special soft rubber in the panel seams. This dual cushion gives the ball a soft feel while maintaining the rebound speed of normal balls. It reduces shock when catching, giving you more agile grip and control. It also improves durability.
© 2005 Molten Corporation All Rights Reserved.


MOLTEN ADVANCED BASKETBALL TECHNOLOGIES
Molten's technology pushes gripping, rebounding and other ball control possibilities to the limits. It's a dream basketball that allows every athlete to realize his or her full potential. Dual-Cushion Technology: Molten's innovative proprietary Dual-Cushion Technology has two dimensions:
1. a high-density/high-cushion foam between the surface and reinforcing layer;
2. a special soft rubber in the panel seams.
This dual cushion gives the ball a soft feel while maintaining the rebound speed

> Dual-Cushion Technology: Molten's innovative proprietary Dual-Cushion Technology has two dimensions: (1) a high-density, high-cushion foam between the surface and reinforcing layer; and (2) a special soft rubber in the panel seams. This dual cushion gives the ball a soft feel while maintaining the rebound speed of normal balls. It reduces shock when catching, giving you more tactile grip and control. It also improves durability.

*Baden Sports, Inc. v. Molten USA, Inc.*, No. 2008-1216 (Fed. Cir.) (Aug. 18, 2008), Joint Appendix Vol. 2, A200370, A200001;[4] *see also* Brief of Cross Appellant, *Baden Sports, Inc. v. Molten USA, Inc.*, No. 2008-1216, 2008 WL 2967594, at *32 (Fed. Cir.) (June 10, 2008). Specifically, Molten advertised its basketball as, for example, having a softer feel, reduced shock and a more tactile grip, all because of its "innovative, proprietary Dual-Cushion Technology."

Notwithstanding such attribution, the Court in *Baden* rejected the argument that Molten's advertising "otherwise implicte[d] the nature, characteristics, or qualities of the basketballs":

> No physical or functional attributes of the basketballs are implied by Molten's advertisements. "Innovative" only indicates, at most, that its manufacturer created something new, or that the product is new, irrespective of who created it. In essence, Baden's arguments in this case amount to an attempt to avoid the holding in *Dastar* by framing a claim

[4] Crocs is concurrently moving that the Court take notice of the Joint Appendix materials filed in *Baden* and cited herein.

> based on false attribution of authorship as a misrepresentation of the nature, characteristics, and qualities of a good.

556 F.3d at 1307. Molten's advertisements were accordingly not actionable under Section 43(a(1)(B) because the only falsity was that the dual cushion technology was "innovative." 556 F.3d at 1307-08.

Here, however, the panel reversed the district court even though Crocs's advertisements say even less about the nature, characteristics or qualities of its "patented" Croslite material than Molten said about its "innovative" Dual-Cushion technology. Appx601, Appx603, Appx1449, Appx1451, Appx1457. Crocs touted the comfort of Croslite and that it warmed, softened and molded to the wearer's feet, but Dawgs has never argued that these statements were false. Appx12. Rather, Dawgs argued only that it was untrue that the Croslite material was patented. Appx11. The panel nevertheless found that these statements could be actionable because "[a] claim that a product is constructed of 'patented' material is not solely an expression of innovation, and hence, authorship." Dkt. 62 at 10-11. This decision cannot be reconciled with Molten's non-actionable statements that its basketballs were constructed of "innovative" dual-cushion technology, resulting in a softer feel, reduced shock and a more

tactile grip. In both cases, striking the words "innovative" or "patented" from the statements results in advertising that is either true, opinion or, at most, mere puffery. Contrary to the panel's reasoning, a misstatement about material being "patented" does not make false a true statement about the material, *e.g.*, that it is soft. Holding that a Section 43(a)(1)(B) claim was not foreclosed as a matter of law as to Crocs's statements conflicts with *Dastar*, *Baden*, *Sybersound* and *Kehoe*.

## II. Lanham Act Section 43(a)(1)(B) Does Not Provide a Cause of Action for the False Claim that a Product is "Patented"

### A. The Text, Structure, and History of the Lanham Act Forecloses a Cause of Action for False Patent Marking

"[A] misrepresentation is actionable under [Section 43(a)(1)(B)] only if it misrepresents the 'characteristics of the good itself'—such as its properties or capabilities." *Kehoe*, 796 F.3d at 590; *Sybersound*, 517 F.3d at 1144. Section 43(a)(1)(B) thus does not reach false statements about inventorship, authorship, ownership, or status of intellectual property protection.

Section 43(a)(1)(B) bars "misrepresent[ing] the nature, characteristics, qualities, or geographic origin of . . . goods." 15 U.S.C. § 1125(a)(1)(B). The words "nature" "characteristics" and "qualities" all

refer to physical or functional attributes. The inclusion of the words "geographic origin" is key: if a misrepresentation about "geographic origin" could be actionable as a misrepresentation as to the "nature, characteristics, [or] qualities" of a good, there would have been no need for Congress to include "geographic origin" in the list. This shows that the words "nature, characteristics, qualities" are referring to properties of the good itself.

Section 43(a)(1)(B)'s limitation to misrepresentations about the good itself is intentional and reflects Congress's careful design. The Lanham Act was never intended to be a catch-all unfair competition statute. The Supreme Court has recognized that its "history and purpose" counsel for a narrower, rather than broader, interpretation of its scope. *Dastar*, 539 U.S. at 31-32. Section 43(a) "is one of the few provisions [in the Act] that goes beyond trademark protection." *Id.* at 28-29. Congress did not intend § 43(a) to "have boundless application as a remedy for unfair trade practices." *Id.* at 29. Rather, Congress meant it to "apply only to certain unfair trade practices prohibited by its text." *Id.*

Congress has intentionally and specifically *narrowed* its scope over time.[5] The panel's holding obliterates Congress's specific choice in 1988 to narrow Section 43(a) to misrepresentations about characteristics of the good itself.

### B. The Lanham Act Should Be Construed Not to Conflict with the Patent Act

Holding that a false claim that a product is "patented" can violate the Lanham Act would raise a direct conflict with 35 U.S.C. § 292, which has its own comprehensive scheme for enforcing its prohibition on using "the word patent" "in advertising in connection with any unpatented article." 35 U.S.C. § 292(a)-(b).

When there are two federal laws in potential conflict, a court looks to "how that conflict can be resolved in a manner that permits each law a proper scope." *Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1347 (Fed. Cir. 1999). The Supreme Court has counselled that the Lanham Act's reach should be limited where it comes in contact with other intellectual property regimes. *See Dastar*, 539 U.S. at 33. This Court

[5] *Compare* 15 U.S.C. § 1125(a) (1946) (prohibiting "false designation of origin, or any false description or representation") *with* 15 U.S.C. § 1125(a)(1) (1992) (prohibiting "misrepresent[ing] the nature, characteristics, qualities, or geographic origin").

has never "held whether § 292 of the Patent Act … conflicts with Lanham Act claims, when there is a marking of products with inapplicable patents." *DP Wagner Mfg. Inc. v. Pro Patch Sys., Inc.*, 434 F. Supp. 2d 445, 460 (S.D. Tex. 2006); *accord Azimuth Unlimited, LLC v. Sea Tel, Inc.*, No. 10-60253-CIV, 2011 WL 13173548, at *5 (S.D. Fla. Apr. 15, 2011). Applying the Lanham Act to false claims that a product is "patented" would nullify 35 U.S.C. § 292 and conflict with the careful balance Congress struck in defining the scope of liability for false claims that products are patented.

Getting the scope of the Lanham Act correct on this question is critically important. "Prior to the enactment of the America Invents Act (AIA) [in 2011], any person could file a qui tam claim for false patent marking and collect one-half of the $500 penalty for each offense under the Patent Act."[6] Jeff Ratinoff, *The Federal Circuit Breathes New Life into False Patent Marking Claims via Section 43(a) of the Lanham Act*, SpencerFane (Oct. 16, 2024). The American Invents Act amended the

[6] This issue became important following this Court's decision in *Forest Group, Inc. v. Bon Tool Co.*, 590 F.3d 1295, 1301-04 (Fed. Cir. 2009), which held that plaintiffs could recover a distinct fine for each falsely marked item. *See* H.R. Rep. No. 112-98(1) at 53 (2011).

false marking statute to “rein[] in” abusive false marking litigation. 157 Cong. Rec. 12984-86 (Sept. 6, 2011) (statement of Sen. Kyl); *see also America Invents Act: Hearing on H.R. 1249 Before the H. Committee of the Whole House on the State of the Union,* 157 Cong. Rec. H4420–26 (2011) (statement of Rep. Smith, Texas). As multiple commentators have recognized, the panel decision “effectively revived a private actor’s right to bring a cause of action for false marking under the unfair competition and false advertising provisions of Section 43(a) of the Lanham Act.” Ratinoff, SpencerFane, *supra.* The Lanham Act should not be construed to permit parties to make an end-run around the careful limitations on remedies that Congress placed in the patent marking statute.

## III. *En Banc* Rehearing is Needed Because the District Court Granted Summary Judgment Where Dawgs Did Not Plead with Specifity Any Alleged Falsity Other than that Croslite Was “Patented,” “Propietary” or “Exclusive”

Neither Dawgs nor the panel decision cites any case from any jurisdiction holding that Section 43(a)(1)(B) applies where a party truthfully advertises about the nature, characteristics or qualities of a product but misstates that a product feature is “patented” or “innovative.” Rather, each of the post-*Dastar* cases cited by Dawgs stands for the proposition that a cause of action under Section 43(a)(1)(B)

requires false statements about a product's nature, characteristics or qualities, not just false attributions of authorship or inventorship of product materials that give the product a certain nature, characteristic or quality. *Nippon Steel & Sumitomo Metal Corp. v. POSCO*, No. CIV.A. 12-2429 DMC, 2013 WL 3285206, at *3-4 (D.N.J. June 27, 2013) ("POSCO falsely promoted its products as the customer choice based on false statements of uniquely superior characteristics and qualities."); *Zobmondo Ent. LLC v. Imagination Int'l Corp.*, No. CV 09-02235 ABC (PLAx), 2009 WL 8714439, at *3-4 (C.D. Cal. June 23, 2009) (denying motion to dismiss Section 43(a)(1)(B) claim where the alleged misrepresentation concerned which company was first to produce a physical good, not which company was the first to come up for the idea underlying the good); *Blue Spike, LLC v. Texas Instruments, Inc.*, No. 6:12-CV-499, 2014 WL 11848751, at *5-7 (E.D. Tex. July 25, 2014) (denying motion to dismiss Section 43(a)(1)(B) claim where competitor was alleged to have misrepresented that its products were the first to include a certain technology and were superior to other competitive products on the market).

The panel's decision thus creates the potential for mischief on remand because the district court did not purport to decide whether advertising that links a misrepresentation of inventorship to, for example, the superior nature, characteristics or qualities of a product was actionable under Section 43(a)(1)(B). Rather, the district court only determined that Dawgs had not alleged any false statement about Croslite other than that it was "patented," "proprietary" or "exclusive." In fact, "Dawgs did not mention anything about Croslite being soft, comfortable, lightweight, odor-resistant, or non-marking." Appx12. Consequently, the district court determined that Dawgs's claim, as pleaded, was foreclosed as a matter of law by *Baden* and *Dastar*. Appx11-12.

This was not simply an oversight by Dawgs or the result of its inability to obtain discovery. Fact discovery in the underlying case closed. Appx1899. Accordingly, the lack of any allegation of a misrepresentation about Croslite's nature, characteristics or qualities in the proceeding below reflects not just that Dawgs did not do so but that it cannot do so.

Finally, a Section 43(a)(1)(B) claim is subject to Rule 9(b). *Goode v. Gaia, Inc.*, No. 20-CV-00742-DDD-KAS, 2023 WL 7190732, at *10 (D. Colo. Nov. 1, 2023) (explaining that "Rule 9(b) applies to claims of falsity under the Lanham Act 'insofar as the factual averments allege intentional or knowing misrepresentations'") (quoting *Cocona, Inc. v. Singtex Indus. Co., Ltd.*, No. 14-cv-01593-MJW, 2014 WL 5072730, at *8 (D. Colo. Oct. 9, 2014)); Appx11-12. Allowing Dawgs to pursue such a claim in the case below, where it has only ever pleaded falsity based on use of the terms "patented," "proprietary" or "exclusive," would result in an untenable situation. Unless this Court addresses the discrepancy created by the panel decision, the district court in this case, and district courts in cases to follow, would not have sufficient guidance to allow them to parse adequately from inadequately alleged Section 43(a)(1)(B) claims where the only pleaded falsity pertains to inventorship or authorship. Likewise, Crocs in this case, and future litigants in other cases, would have to defend against such opaquely defined claims notwithstanding the stricture of Rule 9(b).

## CONCLUSION

For the foregoing reasons, Crocs respectfully requests that the Court grant the petition for rehearing or rehearing *en banc*.

Dated: December 4, 2024

Respectfully submitted,

*<u>/s/ Michael A. Berta</u>*
Michael A. Berta
Sean M. Callagy
Isaac L. Ramsey
ARNOLD & PORTER
KAYE SCHOLER LLP
Three Embarcadero Center,
10th Floor
San Francisco, CA 94111-4024
(415) 471-3100 (tel)
(415) 471-3400 (fax)
michael.berta@arnoldporter.com
sean.callagy@arnoldporter.com
isaac.ramsey@arnoldporter.com

David A. Caine
ARNOLD & PORTER
KAYE SCHOLER LLP
Five Palo Alto Square, Suite 500
3000 El Camino Real
Palo Alto, CA 94306
(650) 319-4500 (tel)
(650) 319-4700 (fax)
david.caine@arnoldporter.com

Andrew Tutt
ARNOLD & PORTER
KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC 20001
(202) 942-5000 (tel)
(202) 942-5999 (fax)
andrew.tutt@arnoldporter.com

*Counsel for Appellee Crocs Inc.*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), I hereby certify that this petition complies with the word length requirements of Court Rules 35-4 and 40-1(a) because it contains 3,899 words, excluding the portions excluded by Federal Rule of Appellate Procedure 32(f). I further certify that this brief complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

*/s/ Michael A. Berta*
Michael A. Berta

**CERTIFICATE OF SERVICE**

I hereby certify, pursuant to Fed. R. App. P. 25(d) and Cir. R. 25, that on December 4, 2024, the foregoing brief was electronically filed with the Clerk of the Court using the CM/ECF system, which will send a notification to the attorneys of record in this matter who are registered with the Court's CM/ECF system.

*/s/ Michael A. Berta*
Michael A. Berta

# ADDENDUM

Crocs, Inc. v. Effervescent, Inc., 119 F.4th 1 (Fed. Cir. 2024)

Case: 22-2160 Document: 65 Page: 1 Filed: 10/03/2024

# United States Court of Appeals for the Federal Circuit

---

**CROCS, INC.,**
*Plaintiff-Appellee*

**v.**

**EFFERVESCENT, INC., HOLEY SOLES HOLDINGS, LTD.,**
*Defendants*

**DOUBLE DIAMOND DISTRIBUTION, LTD., U.S.A. DAWGS, INC., MOJAVE DESERT HOLDINGS, LLC,**
*Defendants-Appellants*

---

2022-2160

---

Appeal from the United States District Court for the District of Colorado in No. 1:06-cv-00605-PAB-MDB, Judge Philip A. Brimmer.

---

Decided: October 3, 2024

---

MICHAEL BERTA, Arnold & Porter Kaye Scholer LLP, San Francisco, CA, argued for plaintiff-appellee. Also represented by SEAN MICHAEL CALLAGY, ISAAC RAMSEY; ANDREW TUTT, Washington, DC.

MATT BERKOWITZ, Reichman Jorgensen Lehman &

Feldberg LLP, Redwood Shores, CA, argued for defendants-appellants. Also represented by NAVID CYRUS BAYAR.

---

Before REYNA, CUNNINGHAM, *Circuit Judges*, and ALBRIGHT, *District Judge*[1].

REYNA, *Circuit Judge*.

Appellants Double Diamond Distribution, Ltd.; U.S.A. Dawgs, Inc.; and Mojave Desert Holdings, LLC (collectively, "Dawgs") appeal from a decision of the United States District Court for the District of Colorado granting summary judgment in favor of Appellee Crocs, Inc. ("Crocs").

Crocs sued Dawgs for patent infringement. Dawgs counterclaimed, alleging that Crocs was liable for damages for false advertising in violation of Section 43(a) of the Lanham Act. Crocs moved for summary judgment on grounds that Dawgs' counterclaim failed as a matter of law. Crocs argued that the circumstances in this case do not give rise to a Section 43(a) cause of action. The district court agreed and entered summary judgment in Crocs' favor. We hold that a cause of action arises from Section 43(a)(1)(B) where a party falsely claims that it possesses a patent on a product feature and advertises that product feature in a manner that causes consumers to be misled about the nature, characteristics, or qualities of its product. We reverse and remand.

## BACKGROUND

The pertinent history of this appeal begins in 2006 when Crocs sued Double Diamond Distribution, Ltd. and several other competitor shoe distributors for patent

---

[1] Honorable Alan D Albright, District Judge, United States District Court for the Western District of Texas, sitting by designation.

infringement.[2] *See* Crocs' Complaint for Patent Infringement, *Crocs, Inc. v. Effervescent, Inc.*, No. 06-cv-00605-PAB-KMT (D. Colo. Apr. 3, 2006), ECF No. 1; *see also In the Matter of Certain Foam Footwear*, 71 Fed. Reg. 27514-01 (May 11, 2006).

In May 2016, Dawgs filed a counterclaim against Crocs alleging false advertising violations of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). In March 2017, Dawgs filed its operative pleading in the case, its Second Amended Answer and Counterclaims ("SACC"). *See* J.A. 469–580. The counterclaim alleges Dawgs was damaged by Crocs' false advertisements and commercial misrepresentations. *See, e.g.*, J.A. 576, ¶ 345. Dawgs alleges that Crocs had

---

[2] This appeal rises from a group of cases spanning multiple forums that have a long and complex history of litigation involving Crocs and its competitors. The district court case against Double Diamond Distribution, Ltd. was stayed for almost five years pending a contemporaneously-filed Section 337 action before the International Trade Commission, which proceeded to an appeal before this court and a remand. *See Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294 (Fed. Cir. 2010). U.S.A. Dawgs was added as a defendant in the district court litigation after it resumed in 2012. The district court case was stayed again from 2012 to 2016 pending inter partes review proceedings. It was also stayed from 2018 to 2020 while U.S.A. Dawgs was engaged in bankruptcy proceedings, during which time Mojave Desert Holdings, LLC became involved in the litigation. Between these two stays, in 2016, Dawgs sued eighteen current and former Crocs officers and directors, alleging the same counterclaims against them as Crocs. The district court consolidated the cases and the individual defendants were later dismissed from the action. The facts and circumstances of the consolidated case are not at issue in this appeal.

Case: 22-1160 Document: 72 Page: 40 Filed: 12/04/2024



engaged in a "campaign to mislead its customers" about the characteristics of the primary material Crocs uses to make its footwear products, a material it promoted as "Croslite." J.A. 495, ¶ 51; J.A. 481, ¶ 7. According to Dawgs, Crocs' website falsely described Croslite as "patented," "proprietary," and "exclusive" (collectively, "patented"). J.A. 575, ¶ 342; *see also* J.A. 603 (Ex. 21 to SACC); J.A. 608 (Ex. 23 to SACC). Dawgs alleges that by promoting Croslite as "patented," Crocs misled current and potential customers to believe that "Crocs' molded footwear is made of a material that is different than any other footwear." J.A. 575, ¶ 342. Dawgs alleges that Crocs' statements deceived consumers into believing that its competitors' molded footwear products are "made of inferior material compared to Crocs' molded footwear." J.A. 576, ¶ 345.

During discovery, Crocs moved for summary judgment on grounds that Dawgs' counterclaim was "legally barred" by the Supreme Court's decision in *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003), and this court's decision in *Baden Sports, Inc. v. Molten USA, Inc.*, 556 F.3d 1300 (Fed. Cir. 2009). J.A. 1398–99; *see generally* J.A. 1393–99.

The district court agreed with Crocs and granted summary judgement in its favor. *Crocs, Inc. v. Effervescent, Inc.*, No. 06-cv-00605-PAB-KMT, 2021 WL 4170997, at *9 (D. Colo. Sept. 14, 2021) ("*Decision*"). The district court decided that in view of *Dastar* and *Baden,* Dawgs failed as a matter of law to state a cause of action under Section 43(a) of the Lanham Act. *Id.* at *7. The district court concluded that the terms "patented," "proprietary," and "exclusive" were claims of "inventorship." *Id.* at *6; *see also* J.A. 1977. Applying *Dastar* and *Baden* to the SACC, the district court determined that Dawgs' claims of inventorship were directed to a claim of false designation of authorship of the shoe products and not the nature, characteristics, or qualities of Crocs' products. *Decision*, 2021 WL 4170997, at *7; *see also* J.A. 1969 (quoting 15 U.S.C. § 1125 (a)(1)(B)).

Dawgs moved for reconsideration, which the district court denied. J.A. 1966; J.A. 1981. Dawgs appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## STANDARD OF REVIEW

We review appeals involving interpretation of the Lanham Act *de novo*, applying the law of the regional circuit in which the relevant district court sits, in this case the Tenth Circuit. *Baden*, 556 F.3d at 1304; *Strauss v. Angie's List, Inc.*, 951 F.3d 1263, 1267 (10th Cir. 2020). Since the Tenth Circuit has not spoken on the legal issue, we must "predict how that regional circuit would have decided the issue in light of the decisions of that circuit's various district courts, public policy, etc." *Panduit Corp. v. All States Plastic Mfg. Co.*, 744 F.2d 1564, 1575 (Fed. Cir. 1984).

Similarly, we review appeals of summary judgment under the law of the regional circuit. *Baden*, 556 F.3d at 1304. The Tenth Circuit reviews a district court's grant of summary judgment *de novo*, applying the same legal standard as the district court. *Faustin v. City & Cnty. of Denver, Colo.*, 423 F.3d 1192, 1195 (10th Cir. 2005); *Hull v. IRS*, 656 F.3d 1174, 1177 (10th Cir. 2011). In determining whether to grant a motion for summary judgment, the district court considers whether the moving party is entitled to judgment as a matter of law. *Faustin*, 423 F.3d at 1198.

## DISCUSSION

Dawgs raises a single issue on appeal: whether the district court erred in granting summary judgment against Dawgs' counterclaim for failure to state a cause of action under Section 43(a)(1)(B) of the Lanham Act. Appellant Br. 6. We first address the Lanham Act.

The Lanham Act was enacted to "protect persons engaged in . . . commerce against unfair competition." 15 U.S.C. § 1127. Section 43(a)(1) of the Lanham Act establishes a federal cause of action for unfair competition. *Dastar*, 539 U.S. at 29.

Section 43(a)(1) of the Lanham Act states,

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> (B) *in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities*,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1) (emphasis added).

The district court found no genuine issue of material fact in dispute supporting a cause of action under Section 43(a)(1)(A). *Decision*, 2021 WL 4170997, at *4. Dawgs does not appeal this ruling. Instead, Dawgs only challenges the district court's decision on whether its counterclaim allegations sufficiently raise a cause of action under Section 43(a)(1)(B) of the Lanham Act.[3] We therefore do not separately address Section 43(a)(1)(A).

---

[3] Various courts have taken the approach that "nature, characteristics, [or] qualities" in Section 43(a)(1)(B)

In addition, as a threshold matter, the key question of whether Crocs' representation that Croslite is patented is in fact false is not in dispute. Section 43(a)(1)(B) creates a cause of action for a person damaged by *false or misleading* commercial advertising or promotions that mislead consumers about the nature, characteristics, or qualities of goods or services. *See* 15 U.S.C. § 1125(a)(1)(B). Crocs conceded in its briefing, and at oral argument before this court, that its statements that Croslite was covered by a patent are false. *See* Appellee Br. 70–71; Oral Arg. Tr. 16:22–16:33. Stated differently, Crocs admits that it was never granted a patent for Croslite. Oral Arg. Tr. 16:22–16:33.

Dawgs' appeal focuses on Section 43(a)(1)(B). Dawgs argues that when commercial misrepresentations that a product is "patented," "proprietary," and "exclusive" are linked to the nature, characteristics, or qualities of the product, those misrepresentations are actionable under Section 43(a)(1)(B) of the Lanham Act. *See, e.g.*, Appellant Br. 23.

Dawgs asserts that the district court's conclusion that *Dastar* and *Baden* are dispositive in this case is erroneous.

---

relate to "the characteristics of the good itself," not intangibles involving the source of ideas embodied in a product, like product authorship. *Baden*, 556 F.3d at 1307 (quoting *Sybersound Recs., Inc. v. UAV Corp.*, 517 F.3d 1137, 1144 (9th Cir. 2008)); *see also Kehoe Component Sales Inc. v. Best Lighting Prod., Inc.*, 796 F.3d 576, 590 (6th Cir. 2015). At least one circuit court has suggested in passing that there is an "open . . . possibility that some false authorship claims could be vindicated under the auspices of § 43(a)(1)(B)'s prohibition on false advertising." *Zyla v. Wadsworth, Div. of Thomson Corp.*, 360 F.3d 243, 252 n.8 (1st Cir. 2004); *see also Baden*, 556 F.3d at 1308 n.1.

Appellant Br. 36; *see Decision*, 2021 WL 4170997, at *6–7. First, Dawgs argues that those cases were based on circumstances different from the circumstances in this appeal. Appellant Br. 28–33, 36. Second, Dawgs argues that its counterclaims adequately allege that Crocs used the terms "patented," "proprietary," and "exclusive" in its advertisements in a manner that misled consumers about the nature, characteristics, or qualities of its own products and the products of its competitors. *Id.* at 46–51. As such, Dawgs argues that it has sufficiently alleged a cause of action under Section 43(a)(1)(B) and therefore the district court should not have granted summary judgment. *Id.* at 6.

*Dastar* and *Baden*

The district court concluded that based on binding precedent established in *Dastar* and *Baden*, Crocs' false claims to have "patented" Croslite are not actionable under Section 43(a)(1)(B). *Decision*, 2021 WL 4170997, at *6. The district court likened falsely claiming to have "patented" something as similar "to plagiarizing or reverse passing off, which *Dastar* held not . . . covered by the Lanham Act's false advertising prohibition." *Id.* (footnote omitted). The district court similarly concluded that this court in *Baden* found non-actionable "terms that the court likened to claims of inventorship" and that in this case, "[f]alsely claiming to have 'patented' something is akin to claiming to have 'invented' it." *Id.* The district court determined that Dawgs' counterclaim could not stand because any claim that a product was patented was directed to inventorship, and thus the counterclaim was precluded by *Dastar* and *Baden*. *Id.* We disagree.

In *Dastar*, the Supreme Court considered the scope of unfair competition that is actionable under Section 43(a)(1)(A) of the Lanham Act, which relates to misrepresentations about the "origin, sponsorship, or approval" of goods or services. *Dastar*, 539 U.S. at 31.

Case: 22-1160 Document: 72 Page: 9 Filed: 11/04/2024



*Dastar* involved a World War II television series first broadcast in 1949. *Id.* at 26. Although the copyright on the television series expired in the 1970s, the respondents acquired exclusive rights to distribute the series on video in the late 1980s. *Id.* In 1995, petitioner Dastar purchased tapes of the original 1949 series, copied them, and edited them with minor changes. *Id.* at 26–27. It then sold the video set as its own product, with no reference to the original series. *Id.* at 27. Respondents brought an action against Dastar under Section 43(a)(1)(A) of the Lanham Act for false designation of origin. *Id.* at 27, 31.

The Court found that "origin" in Section 43(a)(1)(A) of the Lanham Act means "the producer of the tangible goods that are offered for sale, and not . . . the author of any idea, concept, or communication embodied in those goods." *Id.* at 37. The Court concluded that this section of the Lanham Act was not intended to protect originality or creativity, and that "[t]o hold otherwise would be akin to finding that § 43(a) created a species of perpetual patent and copyright, which Congress may not do." *Id.* Because Dastar was the originator of the products it sold, the Court found the Lanham Act claim failed. *Id.* at 38. The Court concluded that parties in respondents' shoes might still have other forms of relief for conduct like Dastar's. *Id.* If, for example, a party substantially copied a series but suggested in advertising that the work was "quite different" from the earlier series, they might be entitled to relief under Section 43(a)(1)(B). *Id.* The Court observed that a Lanham Act cause of action does not arise for merely claiming that a party is the producer of the video. *Id.*

In *Baden*, this court considered the effect of *Dastar* in a Section 43(a)(1)(B) action brought in the Ninth Circuit. *Baden*, 556 F.3d at 1304–08. In a suit between two competing basketball manufacturers, Baden argued that its competitor Molten's advertising violated the Lanham Act. *Id.* at 1302. Molten promoted its basketballs as having a "dual-cushion technology" that its advertisements

described as "innovative." *Id.* at 1302–03. Baden argued that by advertising its basketballs as "innovative," Molten deceived consumers into believing that it was the originator of the dual-cushion technology. *Id.* at 1303. At trial, the jury issued a verdict in favor of Baden. *Id.* at 1304. We reversed.

We explained that in the Ninth Circuit, a claim based on false designation of authorship is not actionable under Section 43(a)(1)(A) or Section 43(a)(1)(B). *Id.* at 1307. Baden had argued that Molten's advertisements were false "precisely because Molten was not the source of the innovation," *i.e.*, not the author. *Id.* We held that "authorship, like licensing status, is not a nature, characteristic, or quality, as those terms are used in Section 43(a)(1)(B) of the Lanham Act." *Id.*; *see Sybersound*, 517 F.3d at 1144. Because Baden based its false advertising claims on allegations that Molten was improperly asserting itself as the innovator, *i.e.*, the author, of the technology, Baden had no claim under Section 43(a)(1)(B). *Id.*

Although *Dastar* and *Baden* are based on different circumstances, the analysis used by the Supreme Court and this court in those cases is informative in this appeal. *Dastar* cautions that a false claim of origin, and nothing more, is a claim of authorship and does not give rise to a cause of action under Section 43(a)(1)(A) or (B). But, here, the false claim that a product is patented does not stand alone. Dawgs presents allegations and evidence that the falsity of Crocs' promotional statements is rooted in the nature, characteristics, or qualities of Crocs' products.

Both the district court and Crocs quote *Baden* to suggest that permitting a Section 43(a)(1)(B) claim based on linking "patented" with a product characteristic would contravene *Dastar* by allowing reframing of a claim that is based on false attribution of authorship. *Baden*, 556 F.3d at 1307; *see Decision*, 2021 WL 4170997, at *7; Appellee Br. 59. We disagree. A claim that a product is constructed

of "patented" material is not solely an expression of innovation and, hence, authorship. Again, *Baden* did not involve false advertisements linking such claims to a product's tangible nature, characteristics, or qualities. In this case, for example, Dawgs submitted webpage printouts that purported to show promotional statements by Crocs that a patent covers Croslite. *See, e.g.*, J.A. 603 (Ex. 21 to SACC), J.A. 608 (Ex. 23 to SACC). Those promotional materials further included statements that Croslite has numerous tangible benefits found in all of Crocs' shoe products. J.A. 603 (Ex. 21 to SACC), J.A. 608 (Ex. 23 to SACC).

Dawgs argues it has stated a cause of action because the falsehood that Croslite is patented was used by Crocs to ascribe characteristics that go to the nature and qualities of Croslite. Dawgs alleges that "Crocs' statements referring to the closed-cell resin that [it] call[s] 'Croslite' as 'exclusive,' 'proprietary,' and/or 'patented'" causes customers to believe that "Crocs' molded footwear is made of a material that is different than any other footwear." J.A. 575, ¶ 342. Dawgs further alleges that Crocs' promotional materials "deceive consumers and potential consumers into believing that all other molded footwear . . . is made of inferior material compared to Crocs' molded footwear." J.A. 576, ¶ 345.

We agree with Dawgs that these allegations about Crocs' advertisement statements are directed to the nature, characteristics, or qualities of Crocs' shoes. We hold that a cause of action arises from Section 43(a)(1)(B) where a party falsely claims that it possesses a patent on a product feature and advertises that product feature in a manner that causes consumers to be misled about the nature, characteristics, or qualities of its product.

## CONCLUSION

We have considered Crocs' remaining arguments and find them unpersuasive. Because Dawgs timely presented

a theory under Section 43(a)(1)(B) of the Lanham Act linking Crocs' alleged misrepresentations in commercial advertisements to the nature, characteristics, or qualities of Crocs' shoes, the district court erred in granting summary judgment on Dawgs' Lanham Act counterclaim. We accordingly reverse and remand for further proceedings.

**REVERSED AND REMANDED**

COSTS

Costs against Crocs.